---

IN THE

# UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF FLORIDA

———————— ► ► ◄ ◄ ————————

1888 FUND, LTD., et al.,

Appellants,

————— v.—————

FONTAINEBLEAU LAS VEGAS HOLDINGS, LLC, et al.,

Appellees.

———————————————

ARCHITECTURAL MATERIALS, INC., et. al,

Appellants,

————— v.—————

FONTAINEBLEAU LAS VEGAS HOLDINGS, LLC, et al.,

Appellees.

———————————————

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-21481-AJC

---

## JOINT OPENING BRIEF OF M&M LIENHOLDERS AND CONTRACTOR CLAIMANTS
### (Oral Argument Requested)

---

SHRAIBERG, FERRARA & LANDAU P.A.
Philip. J. Landau
Florida Bar No. 504017
Plandau@sfl-pa.com
2385 N.W. Executive Center Dr., Suite 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
**Counsel for the M&M Lienholders**

OF COUNSEL:
GORDON SILVER
Gregory E. Garman
Thomas H. Fell
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone: (702) 796-5555
Facsimile: (702) 369-2666

EHRENSTEIN CHARBONNEAU CALDERIN
Robert P. Charbonneau, Esq.
Florida Bar No.: 968234
rpc@ecclegal.com
Daniel L. Gold, Esq.
Florida Bar No.: 761281
dg@ecclegal.com
800 Brickell Avenue, Suite 902
Miami, Florida 33131
Telephone: (305) 722-2002
Facsimile: (305) 722-2001
**Counsel for the Contractor Claimants**

# TABLE OF CONTENTS

I)     STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION……………………..1

II)    STATEMENT OF the ISSUES ON APPEAL AND STANDARD OF REVIEW……….2

    A)  Issues on appeal…………………………………………………………………………….2

    B)  Standard of Review……………………………………………………………………....3

III)   STATEMENT OF THE CASE……………………………………………………………3

    A)  Nature of the Case………………………………………………………………………3

    B)  Prior Proceedings…………………………………………………………………..4

IV)    STATEMENT OF FACTS RELEVANT TO ISSUES ON APPEAL……………………7

V)     SUMMARY OF ARGUMENT………………………………………………………...9

VI)    ARGUMENT……………………………………………………………………………11

    A)  The Bankruptcy Court Erred By Granting a Priming Lien to the Term Lenders……11

    B)  The Bankruptcy Court Erred By Finding Appellants and Other
        Statutory Lienholders to be Adequately Protected……………………….…………15

        1.  Appellants and Other Statutory Lienholders Are
            Entitled to Adequate Protection……..……………………………………16

        2.  The Bankruptcy Court Erred by Disregarding the
            Debtors' Burden of Proof…………………………………………………20

        3.  Appellants and Other Statutory Lienholders Are
            Not Adequately Protected…………………………………………………21

VII)   CONCLUSION……………………………………………………………………..21

# TABLE OF AUTHORITIES

**Federal Statutes and Rules:**

11 U.S.C. §361……………………………………………………………………9, 12, 13, 14
11 U.S.C. §363……………………………………………………………………… 9, 11-12
11 U.S.C. §363(c)……………………………………………………………………………12
11 U.S.C. §363(e)………………………………………………………………….....12, 13, 14
11 U.S.C. §363(p)……………………………………………………………………………17
11 U.S.C. §364……………………………………………………………………9-10, 12, 14
11 U.S.C. §364(d)(1)………………………………………………………………11, 13, 15
11 U.S.C. §364(d)(2)………………………………………………………………10, 17, 20
28 U.S.C. §158(a)(1)

Fed.R.Bankr P. 7001(2)………………………………………………………………16, 20
Fed.R.Bankr P. 8013……………………………………………………………………....3

**Nevada Statutes and Rules:**

NRS 108.222…………………………………………………………………………………19
NRS 108.225(1) ……………………………………………………………………………19
NRS 108.225(2) ………………………………………………………...……………………19
NRS 108.2403…………………………………………………………...……………………19

**Federal Cases:**

Aurelius Capital Master, Ltd. v. TOUSA, Inc.,
     No. 08-51317-CIV-Gold, 2009 LEXIS 12735 (S.D. Fla. Feb. 6, 1999)…………………2

Crocker Nat'l Bank v. American Mariner Indus. (In re American Mariner Indus.),
     734 F.2d 426 (9th Cir. 1984)……………………………………………………………13

In re Englander, 95 F.3d 1028 (11th Cir. 1996)……………………………………………..3

Gamble v. Brown (In re Gamble), 168 F.3d 442 (11th Cir. 1999)………………………………..3

In re James Wilson Assoc., 965 F.2d 160 (7th Cir. 1992)…………………………………13

In re Strug-Division LLC, 380 B.R. 505 (Bankr. N.D.Ill. 2008)………………………………...23

In re Tenney Village Co., 104 B.R. 562 (D.N.H. 1989)…………………………………………14

In re Windsor Hotel, LLC, 295 B.R. 307 (Bankr. C.D. Ill. 2003)………………………………23

Miner v. Bay Bank & Trust Co (In re Miner),
     185 B.R. 362 (N.D. Fla. 1995), *aff'd*, 83 F.3d 436 (11th Cir. 1996)……………………..3

102150-001/766700.doc

Prudential Ins. Co. v. Monnier (In re Monnier Bros.),
    755 F.2d 1336 (8th Cir. 1985)……………………………………………………...13

Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)………………………………………..18

RTC v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.),
    16 F.3d 552, 564 (3d Cir. 1994)…………………………………………………20, 22, 23

Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.),
    963 F.2d 1490 (11th Cir. 1992)……………………………………………………...14, 15

St. Petersburg Hotel Assoc., Ltd., 44 B.R. 944 (Bankr. M.D.Fla. 1984)………………………..23

Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 443 (2007)...……………………………18

**Nevada Cases:**

Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.,
    197 P.3d 1032 (Nev. 2008)………………………………………………………………18

**Secondary Authorities:**

COLLIER ON BANKRUPTCY, Vol. 3, § 363.05[3] (15th ed. 2006)……………………..……13, 14

iv

# I)     STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION

This appeal is of the *First Interim Order (I) Authorizing The Nonconsensual Use Of Cash Collateral Pursuant To Section 363 Of The Bankruptcy Code, (II) Providing Adequate Protection To Prepetition Secured Parties Pursuant To Sections 361, 363, And 364 Of The Bankruptcy Code, And (III) Scheduling Final Hearing* (the "<u>Order</u>") entered on September 18, 2009 by the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>").  ER 1.[1]

The Term Lender Steering Group (the "<u>Term Lenders</u>") argue in their Opening Brief (the "<u>Term Lender Opening Brief</u>") that this Court has jurisdiction over this appeal as a final judgment, order, or decree of the Bankruptcy Court pursuant to 28 U.S.C. §158(a)(1).  The M&M Lienholders and Contractor Claimants (collectively herein, "<u>Appellants</u>") do not agree that interim cash collateral orders are final for all purposes as alleged by the Term Lenders, or that the Order on appeal is final.  The Order does not "completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief" as asserted by the Term Lenders, as the Order authorized the Debtors to use $1.9 million of the cash collateral requested, and specifically set another hearing (held on September 22, 2009) to determine whether to allow the additional requested amounts.  ER 1.  Moreover, Appellants and other mechanics' and materialmen's lien claimants have until October 15, 2009 to file an adversary proceeding against the Term Lenders (and other prepetition secured parties) regarding the priority of the Term Lenders' asserted liens on the Project.  This open deadline to file an adversary proceeding leaves undecided the question of the priority of mechanics' and materialmen's liens against the Project

---

[1] To avoid duplication, the M&M Lienholders and Contractor Claimants will rely upon the Excerpts of Record submitted by the Term Lender Steering Group.  Thus, all references to "ER" will be to the Excerpts of Record submitted by the Term Lender Steering Group, and all references to "D.E." will refer to documents contained in the M&M Lienholders' Designation of Record and Statement of Issues on Appeal by the docket number in the Bankruptcy Court and District Court.

versus the liens of the Term Lenders. Accordingly, the issue of lien priority is not resolved by any of the *interim* orders regarding cash collateral that have been entered by the Bankruptcy Court.

Nonetheless, Appellants agree that the Order gives the Debtors the right to use $1.9 million or more of the Term Lenders' cash collateral before any final order will issue, and thus that the Term Lenders and Appellants should be granted leave to appeal because the Order "(1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) is such that an immediate appeal would advance the ultimate termination of this litigation." Aurelius Capital Master, Ltd. v. TOUSA, Inc., No. 08-51317-CIV-Gold, 2009 LEXIS 12735 at *51 (S.D. Fla. Feb. 6, 1999).

For the Term Lenders, the controlling question of law is whether a bankruptcy court may permit a debtor to use its cash collateral when, as the Term Lenders' contend, replacement liens do not provide adequate protection. For Appellants, the controlling questions of law are twofold: (1) whether the Bankruptcy Court erred in granting the Term Lenders a priming lien when no postpetition funds were lent to the Debtors, and (2) whether the Bankruptcy Court erred in finding the Appellants (and other statutory lienholders) adequately protected.

## II)    STATEMENT OF the ISSUES ON APPEAL AND STANDARD OF REVIEW

### A) Issues on appeal

1.    Whether the Bankruptcy Court erred in granting a priming lien to the Term Lenders, or, more specifically, whether it was proper for the Bankruptcy Court to hold that the Term Lenders' cash collateral was "deemed to have been repaid" to the Term Lenders in satisfaction of prepetition debt, and further "deemed to have been reborrowed by the Debtors as

postpetition debt, pursuant to section 364(d) of the Bankruptcy Code," thus conflating Sections 363 and 364 of the Bankruptcy Code.

2.       Whether the Bankruptcy Court erred in holding that Appellants and other statutory lien claimants were adequately protected, particularly whether Appellants and other statutory lien claimants were adequately protected by the grant of a lien to the Term Lenders which *is senior to* the liens of Appellants and other statutory lien claimants.

### B)  Standard of Review

District courts sit as appellate courts over bankruptcy court decisions.  Miner v. Bay Bank & Trust Co. (In re Miner), 185 B.R. 362, 365 (N.D. Fla. 1995), *aff'd*, 83 F.3d 436 (11th Cir. 1996).  A district court reviews a bankruptcy court's legal conclusions *de novo*.  Id.; In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).  Factual findings are reviewed for clear error. FED.R.BANKR.P. 8013; Gamble v. Brown (In re Gamble), 168 F.3d 442, 444 (11th Cir. 1999).

## III)   STATEMENT OF THE CASE

### A)  Nature of the Case

Pursuant to the Order, the Debtors were authorized to utilize $1,931,755 in what is presumably the Term Lenders' cash collateral.  Following the issuance of the Order, the Court held a second hearing during which it authorized the Debtors to use an additional $524,000, for a total of $2,455,755 in authorized expenses.  In the Order, the Court awarded the Term Lenders a lien for the amount of cash collateral used, and thus a lien for an amount up to $2,455,755, against the Project which is senior to the liens against the Project held by Appellants and other statutory lien claimants.

…

…

3

### B) Prior Proceedings

On June 10, 2009, immediately after commencing these Chapter 11 Cases, Debtors filed the *Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral; (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code; and (III) Scheduling Final Hearing* (the "Cash Collateral Motion").  D.E. 12.

On June 11, 2009, the Court entered the *Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362 and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing* (the "First Interim Cash Collateral Order").  D.E. 49.  Though given other protections, the Term Lenders were not given priming liens pursuant to the First Interim Cash Collateral Order.

On June 23, 2009, Debtors' filed their *Supplement to Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral; (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code; and (III) Scheduling Final Hearing* (the "First Supplement").  D.E. 166.

On July 7, 2009, the Court entered the *Second Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing* (the "Second Interim Cash Collateral Order").  D.E. 242.  Again, though the Term Lenders were given certain protections, the Second Interim Cash Collateral Order did not provide the Term Lenders with priming liens.

On July 20, 2009, Debtors filed their *Second Supplement to Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral; (II) Providing*

*Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code; and (III) Scheduling Final Hearing* (the "Second Supplement"). D.E. 302. Pursuant to the Second Supplement, Debtors proposed for the first time to grant a "priming replacement lien on the Project senior to all other liens presently encumbering the Project *inclusive of mechanics' and materialmen's liens* as well as superpriority claims" as "adequate protection" to the Term Lenders for Debtors' use of the Term Lenders' cash collateral. D.E. 302 at 2 (emphasis added).

On July 31, 2009, over the objection of Appellants and other holders of mechanics' and materialmen's liens, the Court entered the *Third Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, 363, and 364, of Bankruptcy Code, and (III) Scheduling Final Hearing* (the "Third Interim Cash Collateral Order"). D.E. 359. The Third Interim Cash Collateral Order, unlike the First Interim Cash Collateral Order and Second Interim Cash Collateral Order, provides for the priming of the statutory lienholders' liens.[2]

On August 20, 2009, Debtors filed their *Third Supplement to Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral; (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, 263 and 364 of the Bankruptcy Code; and (III) Scheduling Final Hearing* (the "Third Supplement"). D.E. 421. Under the Third Supplement, the Debtors sought to grant the Term Lenders additional priming liens as "adequate protection" for use of the Term Lenders' cash collateral.

…

---

[2] On August 7, 2009, the Bankruptcy Court entered the Amended Third Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of Bankruptcy Code, and (III) Scheduling Final Hearing (the "Amended Third Interim Cash Collateral Order"). D.E. 389. The Bankruptcy Court entered the Amended Third Interim Order to correct a scrivener's error in paragraph 21 of the Third Interim Cash Collateral Order.

On August 27, 2009, the Court entered the *Fourth Interim Order (I) Authorizing Use of Cash Collateral Pursuant to § 363 of Bankruptcy Code; (II) Adequate Protection to Secured Parties Pursuant to §§ 361, 362, 363, and 364, of Bankruptcy Code; and (III) Scheduling Final Hearing* (Mark, J.) (the "Fourth Interim Cash Collateral Order"). D.E. 454. The Fourth Interim Cash Collateral Order authorized Debtors' continued use of cash collateral and granted additional priming liens to the Term Lenders as adequate protection.

On September 14, 2009, after it had become clear that Debtors were unable to reach an agreement with the Term Lenders for continued use of the cash collateral, Debtors filed their *Emergency Motion for Interim and Final Orders (I) Authorizing use of Previously Authorized Cash Collateral; (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 363, and 374 of the Bankruptcy Code; and (III) Scheduling Final Hearing* (the "Motion"), seeking to use approximately $2.9 million in cash collateral and to grant the Term Lenders priming liens in the same amount. ER 7.

On September 16, 2009, only two days after the Motion was filed, the Bankruptcy Court heard the parties' arguments and evidence (or lack thereof), at which time Appellants asserted their objections to the Motion. Transcript of September 16, 2009 Hearing. On September 18, 2009, the Bankruptcy Court entered the *First Interim Order (I) Authorizing the Nonconsensual Use of Cash Collateral and to (II) Provide Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 363, and 364 of the Bankruptcy Code and (III) Scheduling Final Hearing* (the "Order"). ER 1. Under the Order, Debtors were authorized to use $1,931,755 in cash collateral, and the Term Lenders were granted a priming lien in this same amount. With respect to certain expenses Debtors sought to incur using cash collateral, the Bankruptcy Court heard arguments on September 22, 2009. Transcript of September 22, 2009 Hearing.

In an oral ruling at the conclusion of the hearing on September 22, 2009 which has not been reduced to a written order, the Bankruptcy Court authorized Debtors to use an additional $524,000 in cash collateral, and granted priming liens to the Term Lenders in this same amount. Transcript of September 22, 2009 Hearing.

Thus, the Order, as supplemented, grants to the Term Lenders a superpriority lien against the Project in the amount of $2,455,755, which is senior to the liens of Appellants and other statutory lien claimants. Of this amount, $649,625 was authorized to pay for professional fees and services, including $320,000 to Debtors' counsel. $50,000 was authorized to pay Debtors' Nevada mechanics' lien counsel. ER 1.

## IV)    STATEMENT OF FACTS RELEVANT TO ISSUES ON APPEAL

On June 9, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). Each of the Debtors continues to operate its business and manage its affairs as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Code.[3]

Prior to the Petition Date, the Debtors were engaged in the construction and development of "Fontainebleau Las Vegas," a casino hotel resort with gaming, lodging, convention and entertainment amenities (the "Project"). D.E. 5 at ¶ 7. Debtors have alleged that the Project is 70% complete, and that construction was halted as a result of the unjustified failure of certain of the Debtors' lenders to fulfill their loan commitments. Id.

…

---

[3] Unless otherwise stated, all references to Chapters or Sections shall refer to 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and all Rule references shall refer to the Federal Rules of Bankruptcy Procedure, 1001-9037 (the "Bankruptcy Rules")

Debtors have contended that as of the Petition Date, Debtors owed approximately $1.7 billion in secured debt, not including debt owed to the lien claimants. Specifically, Debtors contend that as of the Petition Date, approximately $700 million was outstanding under the Term Loan Facility; approximately $336.7 million was outstanding under the Delayed Draw Facility; and letters of credit in the aggregate face amount of approximately $13 million were outstanding under the Revolver Facility. D.E. 5 at ¶ 13-23. Further, $675 million of the Junior Mortgage Notes, along with the accrued interest thereon, was outstanding. <u>Id.</u>

Debtors filed an adversary proceeding against the members of the Senior Credit Facility (the "<u>Term Lenders</u>") in connection with the alleged defaults and wrongful termination by the bank of their alleged funding commitments, seeking specific performance of the Term Lenders' obligations as well as monetary damages. D.E. 5 at ¶ 26. Debtors' summary judgment motion against the Term Lenders has been denied and the case will proceed to trial. Case No. 1:09-cv-21879-ASG, D.E. 62. To date, the alleged obligations remain unfunded and Debtors have not found a source of funding adequate to complete the Project. <u>See</u> <u>generally</u> Transcript of September 16, 2009 Hearing. Now, more than three months after the Petition Date, construction has not recommenced. As of this date, Debtors have not come forward with a buyer for the Project, located a source of funding for completion of the Project, or proposed a plan of reorganization. <u>Id.</u>

***The Amount and Priority of the Mechanics' Lien Claims***

In its Complaint against the Prepetition Lenders, Turnberry West Construction ("<u>TWC</u>"), the general contractor of the Project, asserted a lien of $675,260,792.68, excluding interest. D.E. 268 at ¶ 41.

…

In its Complaint, TWC alleged that pursuant to the Construction Contract, a notice to proceed was actually issued on April 1, 2007, and that "excavation and other work commenced on the Project in November 2006 and from that time the existence of construction work at the Project was open, notorious and obvious." Id. at 42. The Complaint further alleged that on June 4, 2009, TWC filed and recorded a claim of lien in the public records of Clark County Nevada in accordance with Nevada law, for $668,990,933.27, the vast majority of which constituted amounts owed to various subcontractors who performed work for which they were not paid. Id. at 45.

In the Motion, Debtors admitted that as of August 17, 2009, Notices of Lien had been filed against the Project asserting mechanics' liens in the aggregate amount of approximately **$615 million**, which amount does not include the Notice of Lien filed by TWC in the amount of $669 million because TWC's lien claim incorporates claims on behalf of subcontractors and is thus at least partially duplicative.[4] ER 7 at ¶ 28.

## V) SUMMARY OF ARGUMENT

The Bankruptcy Court erred in holding that the Term Lenders' cash collateral was "deemed to have been repaid" to the Term Lenders in satisfaction of prepetition debt, and further "deemed to have been reborrowed by the Debtors as postpetition debt, pursuant to section 364(d) of the Bankruptcy Code," in order to justify granting a priming lien to the Term Lenders under Section 364(d)(1) for the Debtors' use of the Term Lenders' cash collateral, when neither Section 363(e) (cash collateral) nor Section 361 (adequate protection) explicitly or implicitly authorizes the award of priming liens as adequate protection for use of cash collateral. Section 364(d), by its express terms, applies only to the granting of liens as security for *new, postpetition* credit

---

[4] ER 7 at ¶ 28. Debtors have also admitted that as of the Petition Date, approximately $403 million of payables were outstanding in connection with the Project, and that lien claims resulting from these payables may prime the mortgage liens of existing lenders. D.E. 5 at ¶ 27.

authorized by the Court. Further, because Debtors failed to introduce evidence that they could obtain no other source of financing, a priming lien is improper as a matter of law under Section 364(d)(1)(A).

The award of the priming lien to the Term Lenders directly reduces the collateral base of the Appellants and other statutory lienholders, who have first priority liens against the Project as a matter of Nevada law. Consequently, adequate protection must be given to Appellants and the other statutory lienholders.

The Bankruptcy Court committed clear error in finding Appellants and the other statutory lienholders adequately protected. Adequate protection must provide a prepetition secured creditor with the same protection it would have if the "authorized transaction" had not occurred. No equity cushion exists to protect the statutory lienholders. By Debtors' admission, $615 million in statutory liens have been filed against the Project, and the holders of mechanics' liens "may well also be undersecured." ER 7 at ¶ 57-58. However, Debtors failed to establish that the Project exceeds the amount of the liens, and thus have failed to meet their burden of proving adequate protection to Appellants and other statutory lienholders in the amount of the priming lien under Section 364(d)(2). The sole evidence of value of the Project which has been introduced in these Chapter 11 Cases is a prepetition appraisal valuing the Project at $318.7 million, far below the lien claims filed against the Project. Debtors have no other assets against which replacement liens may be granted. Finally, the possibility of preserving, or even of increasing, the value of property does not constitute adequate protection.

…

…

…

102150-001/767433

## VI)   ARGUMENT

### A)  The Bankruptcy Court Erred By Granting a Priming Lien to the Term Lenders

Paragraph 9(a) of the Order grants to the Term Lenders "Adequate Protections Liens" pursuant to Section 364(d)(1),

> ...which Adequate Protection Liens shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to any liens (as that term is defined in section 101(37) of the Bankruptcy Code ("Liens") on the Collateral *including, without limitation, any Statutory Liens*...[5]

ER 1 at ¶ 9(a) (emphasis added).  Pursuant to the Order, these Adequate Protection Liens, also known as priming liens, are senior in priority to all other lien claimants including those asserting statutory liens under Nevada law, which are, as a matter of law, senior to the prepetition liens of the Term Lenders.  Id.

The Court apparently justified the grant of a priming lien under Section 364(d)(1) by finding that the Term Lenders' cash collateral was "deemed to have been repaid" to the Term Lenders in satisfaction of prepetition debt, and further "deemed to have been reborrowed by the Debtors as postpetition debt, pursuant to section 364(d) of the Bankruptcy Code," thus conflating the analyses required by Sections 363 and 364 of the Bankruptcy Code.  ER 1 at ¶ F.

Sections 363 and 364 of the Bankruptcy Code are separate sections which require separate analyses, and it was error for the Court to apply the analysis supporting priming liens under Section 364 to a cash collateral request under Section 363.  Section 363 of the Bankruptcy Code, entitled "Use, sale, or lease of property," applies to a trustee or debtor-in-possession's request to use, sell, or lease assets of the estate outside of the ordinary course of business,

---

[5] The Order defines "Collateral" as "all prepetition and postpetition assets and properties (tangible, intangible, *real*, personal, and mixed) of each of the Debtors of any kind or nature, whether now existing or newly acquired or arising…" The priming lien granted to the Term Lenders in the "Collateral," therefore, attaches a lien to the Debtors' real property, including the Project, against which mechanics and materialmen have a first priority statutory lien under Nevada law.

regardless of whether someone other than the trustee or debtor-in-possession has an interest in such assets.  11 U.S.C. §363.  A debtor-in-possession's request to use the cash collateral in which a lender has an interest is encompassed within Section 363.

By contrast, Section 364 of the Bankruptcy Code, entitled "Obtaining credit," makes no reference to cash collateral.  11 U.S.C. §364.  Section 364 authorizes a trustee or debtor-in-possession who continues to operate the business of the debtor to obtain credit postpetition.  Id. A trustee or debtor-in-possession may obtain unsecured credit which is treated as an administrative expense.  Id.  In certain circumstances, if the debtor-in-possession is able to establish that it is unable to obtain credit on these terms, the court may authorize obtaining credit secured by a lien on unencumbered property or secured by a junior lien on encumbered property. 11 U.S.C. §363(c).  Only in very limited circumstances - when the debtor-in-possession establishes both that it is unable to otherwise obtain credit and the "primed" lienholder is adequately protected - is the debtor-in-possession authorized to obtain credit secured by a senior or equal lien on encumbered property.  11 U.S.C. §364(d).  Though Debtors and the Bankruptcy Court have applied Sections 363 and 364 in tandem, they are two entirely separate sections of the Bankruptcy Code which set forth separate standards and achieve separate objectives.

Under Section 363, a debtor may use cash collateral only if the entity holding an interest in the cash collateral consents or the bankruptcy court authorizes its use.  11 U.S.C. §363(c)(2). Section 363(e) further provides

> …at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest…

11 U.S.C. §363(e).

Section 361 provides that when adequate protection is required under Section 363 or

Section 364, adequate protection may be provided by (1) requiring the trustee to make cash payments to the entity, (2) providing the entity additional or replacement liens, or (3) granting other relief which will result in a realization by the entity of the indubitable equivalent of its interest in the property so used, sold, or leased. 11 U.S.C. §361. Substitute liens, equity cushions, and operating controls have been found sufficient. COLLIER ON BANKRUPTCY, Vol. 3, § 363.05[3] (15th ed. 2006) (*citing* <u>In re James Wilson Assoc.</u>, 965 F.2d 160 (7th Cir. 1992); <u>Prudential Ins. Co. v. Monnier (In re Monnier Bros.)</u>, 755 F.2d 1336 (8th Cir. 1985); <u>Crocker Nat'l Bank v. American Mariner Indus. (In re American Mariner Indus.)</u>, 734 F.2d 426 (9th Cir. 1984), *overruled on other grounds*, <u>United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)</u>, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)).

Section 364(d)(1) of the Bankruptcy Code provides:

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by ***a senior or equal lien*** on property of the estate that is subject to a lien only if (A) the trustee is unable to obtain such credit otherwise; and (B) ***there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted***.

11 U.S.C. §364(d)(1) (emphasis added).

Though adequate protection is generally deemed to be a flexible concept, nothing in either Section 363(e) or Section 361 indicates that adequate protection may be provided to a creditor on account of the debtor's use of that creditor's collateral by granting a lien which is senior or equal to the lien of another party. <u>See</u> 11 U.S.C. §§361, 363(e). The only reference to the granting of a senior or equal lien (the "priming lien") is found in Section 364(d)(1), which pertains to the extension of credit to a debtor post-petition.

…

The Bankruptcy Court leapt from a Section 363(e) analysis to a Section 364(d)(1) analysis through the following:

> **Prepetition Debt and Adequate Protection Obligations Deemed to Be Postpetition Debt Secured by Senior Lien Under Section 364(d) of the Bankruptcy Code**.  Under the Prior Cash Collateral Orders, the Prepetition Secured Parties were granted Adequate Protection Obligations, including Adequate Protection Liens and Superpriority Claims, as protection for the use of Cash Collateral thereunder…Pursuant to the Third Interim Order and the Fourth Interim Order, the Cash Collateral authorized to be used thereunder was ***deemed to have been repaid to the Prepetition Secured parties*** in satisfaction of payment Obligations under the Prepetition Loan Documents, ***and further deemed to have been reborrowed by the Debtors as postpetition debt, pursuant to section 364(d)*** of the Bankruptcy Code…Based on the record before this Court, the continued application of such provisions to the Cash Collateral utilized under this Order is likewise appropriate, necessary, and authorized by the Bankruptcy Code.

ER 1 at ¶ F.  Thus, the Order creates a fiction that Debtors have repaid prepetition debt using the cash collateral, and the Term Lenders have "re-lent" the funds, when in fact no postpetition lending has occurred at all.

Neither Section 363(e) nor Section 361 explicitly or implicitly authorizes the award of priming liens as adequate protection for use of cash collateral.  The Eleventh Circuit recognized this limitation in <u>Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.)</u>, in which the Court found that Section 364(d), by its express terms, applies only to the granting of liens as security for new, postpetition credit authorized by the Court.  963 F.2d 1490, 1495 (11th Cir. 1992) (*citing* <u>In re Tenney Village Co.</u>, 104 B.R. 562, 570 (D.N.H. 1989)).

The Term Lenders and Debtors may be inclined to argue that the priming lien provided for under the terms of the Order is nothing more than a typical "roll-up" of prepetition debt into postpetition lending.  However, in the typical roll-up, the prepetition lender agrees to advance *new* funds postpetition with the agreement that the proceeds of prepetition accounts receivables will be applied to reduce the prepetition debt.  <u>See</u> Collier on Bankruptcy, Vol. 3,

§364.04[2][e] (15th ed. 2006).  In a roll-up, *new funds* are being lent to the debtor.

No postpetition financing was provided to the Debtors by the Term Lenders in this case. Section 364(d), by its express terms, applies only to the granting of liens as security for ***new, postpetition credit*** authorized by the Court.  <u>In re Saybrook Mfg. Co.</u>, 963 F.2d 1490 at 1495. There is no authority supporting an award of a priming lien over the objection of a secured creditor when no new financing has been provided.  Thus the "priming lien" protection of Section 364(d)(1) should not have been awarded to the Term Lenders and should not be upheld.

Finally, the plain language of Section 364(d)(1) requires that a debtor seeking to grant a priming lien must establish that it is unable to obtain such credit on other terms.  11 U.S.C. §364(d)(1)(A).  At the hearing held on September 16, 2009, the Debtors submitted no evidence that they were unable to obtain financing on any other terms.  For this reason alone, the grant of a priming lien to the Term Lenders violates the plain language of the Bankruptcy Code and should not be upheld.

### B) The Bankruptcy Court Erred By Finding Appellants and Other Statutory Lienholders to be Adequately Protected

Even if the Bankruptcy Court's authorization of fictional debtor-in-possession financing under Section 364(d)(1) is upheld, the award of the priming lien to the Term Lenders must not be.  Under Section 364(d)(1)(B), an extension of credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien," may be granted to a postpetition lender only if there is "adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."  11 U.S.C. §364(d)(1)(B).

…

102150-001/767433

1. ***Appellants and Other Statutory Lienholders Are Entitled to Adequate Protection***

Each of the M&M Lienholders and Contractor Claimants, along with the other holders of mechanics' and materialmen's liens, is a "holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." There is no dispute as to the existence of the liens against the Project. In the Motion, Debtors admitted that as of August 17, 2009, Notices of Lien had been filed against the Project asserting mechanics' liens in the aggregate amount of approximately **$615 million**, which amount Debtors asserted does not include the Notice of Lien filed by TWC in the amount of $669 million because such claim is at least partially duplicative. ER 7 at 28.[6] Moreover, the M&M Lienholders have filed a Motion for Modification of the Automatic Stay (D.E. 506), supported by eighteen (18) declarations of the M&M Lienholders establishing at least $105,923,271 in liens against the Project.

Because the only "evidence" of value provided by the Debtors at any point in this case indicates that the value of the Project is only $318.7 million,[7] Appellants and other statutory lien claimants are undersecured and thus entitled to adequate protection for the reduction in their interest in the collateral occasion by the grant of the priming lien to the Term Lenders.

Though both Debtors and the Term Lenders have asserted that the liens of the subcontractors are inflated and encompass work not yet performed, neither Debtors nor the Term Lenders have taken any steps under Bankruptcy Rule 7001(2) to attack these liens.[8]

---

[6] In the Term Lender Steering Group's Opening Brief, the Term Lenders assert that the mechanics' and materialmen's lien claimants allegedly hold claims totaling approximately $318 million. The M&M Lienholders are not able to locate any support in the record for this contention.

[7] This valuation is discussed *infra*.

[8] Bankruptcy Rule 7001(2) mandates that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property…" must be pursued as an adversary proceeding. FED.R.BANKR.P. 7001(2). A Rule 7001 matter initiated by motion "fails on procedural grounds" and may not be included in another matter already before the Court. See Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 763 (5th Cir. 1995) (*quoting* In re Perkins, 902 F.2d 1254, 1258 (7th Cir. 1990)).

Further, though the Term Lenders claim surprise that the lien claimants are asserting a superior priority, this assertion is no surprise, nor should it be. Howard Karawan, the Debtors' representative, asserted in his Declaration filed in support of the Debtors' first day pleadings on or about the Petition Date that approximately $403 million of payables were outstanding in connection with the Project, and that lien claims resulting from these payables *may prime the mortgage liens of existing lenders under Nevada law*. D.E. 5, ¶ 27 (emphasis added). Further, in its Complaint against the Term Lenders and other prepetition secured parties filed on July 14, 2009, TWC alleged that pursuant to the Construction Contract, a notice to proceed was issued on *April 1, 2007*, and that "excavation and other work commenced on the Project in *November 2006* and from that time the existence of construction work at the Project was open, notorious and obvious." D.E. 268 at 42 (emphasis added). The Complaint further alleged that on *June 4, 2009* (prior to the Petition Date) TWC filed and recorded a claim of lien in the public records of Clark County Nevada in accordance with Nevada law, for $668,990,933.27, the vast majority of which constituted amounts owed to various subcontractors who performed work for which they were not paid. Id. at 45.

Though the Debtors bear the ultimate burden of proof on the issue of adequate protection, 11 U.S.C. §364(d)(2), Debtors correctly stated in the Motion that Section 363(p) provides that an entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest. ER 7 at 26 (citing 11 U.S.C. §363(p)). However, as indicated above, Debtors admitted that approximately $615 million in lien claims were filed against the Project, and Debtors offered no support for the proposition that a lien claim is invalidated because the "Debtors and certain of the Prepetition Lenders have raised questions regarding the validity and priority of the Mechanic's Liens." See ER 7 at 26.

102150-001/767433

No determination of the priority of the liens against the Project has been made by the Bankruptcy Court or any other court, and it is indisputable that such a priority determination must be made. However, the adversary proceeding filed by TWC against the Term Lenders and other prepetition secured parties seeking declaratory judgment that the lien claims are in first position was stayed by the Bankruptcy Court upon Debtors' motion, and attempts by the Contractor Claimants to intervene in that adversary to assert their priority position was denied. Case No. 09-01762-AJC, D.E. 13, 20, 29. Pursuant to the Fourth Interim Cash Collateral Order, Appellants and other mechanics' and materialmen's lien claimants have until October 13, 2009 to file a proof of claim or October 15, 2009 to file an adversary proceeding against the Term Lenders (and other prepetition secured parties) regarding the priority of the liens. D.E. 454.[9]

The determination of the validity, extent and priority of a lien is made by examining the relevant state law. Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 443, 450-51, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007); Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.) In this case the liens of Appellants and the other statutory lienholders are created by operation of Nevada state law. The liens created by NRS 108.221 through 108.246 are creatures of statute and the right to enforce such liens arises from statutory provisions. Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc., 197 P.3d 1032, 1041 (Nev. 2008) (stating that a "contractor has a statutory right to a mechanic lien for the unpaid balance of the price agreed upon for labor, materials, and equipment furnished.")

---

[9] The ability of the Bankruptcy Court to shift the burden of proof and pleading to the M&M Lienholders and other mechanics' and materialmen's lien claimants to defend their liens is in dispute, and may be the subject of another appeal.

The creation or existence of the lien is determined by NRS 108.222, which provides that "a lien claimant has a lien upon the property, any improvements for which the work, materials and equipment were furnished or to be furnished, and any construction disbursements accounts established pursuant to NRS 108.2403," for either: (a) the unpaid balance of the price agreed upon for such work, material or equipment if the parties had agreed on the price of the work, material, or equipment; or (b) if the parties had not agreed on the price then the lien is for "an amount equal to the fair market value of such work." NRS 108.222.

Pursuant to NRS 108.225, mechanics' and materialmens' liens are preferred to:

(a) Any lien, mortgage or other encumbrance which may have attached to the property after the commencement of construction of a work of improvement.

(b) Any lien, mortgage or other encumbrance of which the lien claimant had no notice and which was unrecorded against the property at the commencement of construction of a work of improvement.

NRS 108.225(1).

The statute further provides:

Every mortgage or encumbrance imposed upon, or conveyance made of, property affected by the liens provided for in N.R.S. 108.221 to 108.246, inclusive, after the commencement of construction of a work of improvement are *subordinate and subject to* the liens provided for in N.R.S. 108.221 to 108.246, inclusive, *regardless of the date of recording the notices of liens*.

NRS 108.225(2) (emphasis added).

As asserted by TWC in its Complaint, the work on the Project commenced on or about November 2006, significantly before the Term Lenders entered into the June 6, 2007 loans. Therefore any and all mechanics' liens are superior to the liens granted to the Term Lenders in connection with the June 6, 2007 loans as a matter of law. Pursuant to applicable Nevada law, this priority scheme holds regardless of the date of recording of the liens.

…

## 2. *The Bankruptcy Court Erred by Disregarding the Debtors' Burden of Proof*

Because the liens of the mechanics and materialmen are admitted by Debtors and have not been attacked under Rule 7001(2), Debtors were required to establish that Appellants' and other mechanics' and materialmen's lien claimants are adequately protected in order to prime their liens. 11 U.S.C. §364(d)(2) (in any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection); see RTC v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994) (holding that bankruptcy court had to find that mortgagee's interests were adequately protected in order to approve post-petition financing on a super-priority basis).

Debtors failed to introduce *any* evidence that Appellants and other mechanics' and materialmen's lien claimants are adequately protected, much less evidence sufficient to support the Bankruptcy Court's finding of adequate protection. The only "evidence" as to the value of the Project adduced by Debtors in support of their Motion is set forth in footnote 17 of the Motion, which states:

> …The Prepetition Agent, however, did submit to the Court an appraisal performed by Cushman & Wakefield establishing the market value of the Project at $318.7 million as of May 11, 2009 (the "Prepetition Agent's Appraisal"). See Exhibit 29 Part I to Declaration of Henry Yu [Adv. Pro. 09-1621-AJC, Dkt. No. 103-36]…

ER 7 at 23.[10] Thus, the only "evidence" of the value of the Project before the Bankruptcy Court shows that the Project was worth only $318.7 million immediately prior to the Petition Date. Appellants and other mechanics' and materialmen's lien claimants, holding liens in the

---

[10] Notably, the Prepetition Agent's Appraisal was never admitted into evidence in the cash collateral hearings, nor disclosed to the M&M Lienholders, and the M&M Lienholders learned of the Prepetition Agent's Appraisal for the first time in the Motion filed on September 14, two days before the hearing.

approximate amount of $615 million (ER 7) are thus undersecured.[11]   By Debtors' own admission, Appellants and other mechanics' and materialmen's lien claimants are not protected by an equity cushion in the Project.

Because Appellants and other mechanics' and materialmen's lien claimants are undersecured, as indicated by Debtors' own admission, each dollar of any priming lien granted to the Term Lenders reduces the value of the mechanics' and materialmen's interests in the value of the collateral by the same amount and therefore Appellants and the other statutory lienholders are entitled to adequate protection.

### 3.   *Appellants and Other Statutory Lienholders Are Not Adequately Protected*

The Bankruptcy Court heard no testimony or proffer at the hearing on the Motion, nor did it admit any evidence.   See Transcript of September 16, 2009 Hearing.   Despite hearing no evidence from Debtors, the Bankruptcy Court inexplicably made the conclusory finding that the priming lien granted *to the Term Lenders* provides adequate protection to the holders of statutory liens.  Specifically, the Bankruptcy Court found

> The Adequate Protection Obligations provided for hereunder including, without limitation, the Priming Lien in the Collateral granted herein, constitute adequate protection pursuant to section 361 of the Bankruptcy Code of the interests of any of the Prepetition Lenders and Statutory Lienholders who have objected to the Motion or did not consent to the use of Cash Collateral as authorized herein.

ER 1 at 7.  How it is that a lien granted to the Term Lenders which *primes* statutory liens, and thus reduces the value of the statutory lienholders' security can protect them defies logic.

Debtors argued in their Motion that the cash collateral they sought to use, and thus the priming lien granted to the Term Lenders, adequately protects the statutory lien claimants

---

[11] Debtors further asserted that "Based upon the $318.7 million valuation of the Project set forth in the Prepetition Agent's Appraisal, the holders of Mechanic's Liens may well also be undersecured."  ER 7.

because the use of such funds would preserve the Project.  How $649,625 in professional fees preserves the value of the collateral is not clear.  Even more bothersome is how $50,000 paid to Debtors' Nevada mechanics' lien counsel provides adequate protection to Appellants and other lien claimants.  Debtors freely admit they have no financial interest in these cases because, barring the most miraculous of circumstances, no money will be left for equity.  <u>See</u> Transcript of July 27, 2009 Hearing, p. 34, lines 14-17.  Thus, while it is not clear what services the Debtors' Nevada mechanics' lien counsel have performed, it is certainly plausible that the lien of Appellants and other statutory lien claimants have been primed to pay for Debtors' lien counsel to attack their liens.  The outrageous unfairness of this result should not be lost on the Court.

However, regardless of the truth or falsity of the Debtors' contention that the use of the cash collateral preserves the Project and thus adequately protects Appellants and other statutory lien claimants, it is legally insufficient.  Adequate protection must provide the prepetition secured creditor with the same protection it would have if the "authorized transaction" had not occurred.  <u>In re Swedeland</u>, 16 F.3d at 564.  Debtors offered no authority for the proposition that a priming lien granted for payment of attorneys fees and other administrative expenses of the estate provides Appellants and other statutory lien claimants with the same protection they would have if the priming lien was not granted.  The proposition that preserving or possibly increasing the value of property constitutes adequate protection has been soundly rejected by numerous courts, as argued in the Term Lender Steering Group's Opening Brief.  In <u>Swedeland</u>, for example, the Third Circuit rejected the notion that "development property is increased in value simply because a debtor may continue with construction which might or might not prove to be profitable."  <u>Swedeland</u>, 16 F.3d at 566.

…

As established by the Term Lender Steering Group's Opening Brief, a bankruptcy court may not grant a lien which primes a pre-existing undersecured creditor without providing new collateral as adequate protection. See, e.g. St. Petersburg Hotel Assoc., Ltd., 44 B.R. 944 (Bankr. M.D.Fla. 1984) (denying debtors request to approving financing secured by priming lien absent compensatory measures to assure the preexisting secured creditor's position because "…to permit the Debtors to saddle this property with an additional encumbrance which is superior to the interest of the Mortgagee would clearly operate to further deteriorate the position of the Mortgagee…"); In re Strug-Division LLC, 380 B.R. 505 (Bankr. N.D.Ill. 2008); In re Windsor Hotel, LLC, 295 B.R. 307 (Bankr. C.D. Ill. 2003) (where debtor could not show that property securing creditors' claims had value in excess of the claims and debtor had no other unencumbered assets with which to provide creditors a replacement lien, debtor's request for leave to borrow on superpriority basis denied).

The Debtors have yet to propose an exit strategy. Debtors have not come forward with a buyer for the Project, located a source of funding for completion of the Project, or proposed a plan of reorganization. The Debtors have not demonstrated any ability to obtain financing to complete the Project, particularly in light of this Court's previous denial of the Debtors' summary judgment motion against the Term Lenders. Case No. 1:09-cv-21879-ASG, D.E. 62. The Debtors' lack of options at this stage of the proceedings brings this case within the holdings of Swedeland, Strug-Division, and Windsor Hotel, LLC, as any suggestion that that the use of the cash collateral obtained by the Debtors in support of the priming lien granted to the Term Lenders will somehow result in additional value to Appellants and other statutory lien claimants is speculative, at best. Hopes and dreams do not constitute adequate protection.

…

23

## VII)   CONCLUSION

Regardless of whether the Court allows the Debtors' use of the Term Lenders' cash collateral under Section 363, the priming lien granted to the Term Lenders under Section 364 by creating the fiction that new funds were lent to the Debtors must be overruled.  Not only did the Debtors fail to establish that no other source of financing was available to satisfy their administrative needs, a priming lien may be awarded only for a postpetition extension of credit in the Eleventh Circuit and under the plain language of the Bankruptcy Code.

Even if a priming lien for use of cash collateral is authorized by Section 364, the priming lien must be rejected because Appellants and the other statutory lienholders are undersecured and were not provided with adequate protection as required by Section 364(d)(1)(B).

Dated: September 25, 2009

Respectfully Submitted,


By: /s/ Philip J. Landau
    Philip. J. Landau
    Florida Bar No. 504017
    SHRAIBERG, FERRARA & LANDAU P.A.
    2385 N.W. Executive Center Dr.,
    Suite 300
    Boca Raton, FL 33431
    Telephone: (561) 443-0800
    Facsimile: (561) 998-0047
    Email: Plandau@sfl-pa.com

    OF COUNSEL:
    Gregory E. Garman
    Nevada Bar No. 6654
    Thomas H. Fell
    Nevada Bar No. 3717
    GORDON SILVER
    3960 Howard Hughes Pkwy., 9th Floor
    Las Vegas, Nevada 89169
    Telephone: (702) 796-5555
    Facsimile: (702) 369-2666

## Certificate of Service

**I hereby certify** that on September 25, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that all persons receiving electronic notices through CM/ECF and all parties to this Appeal have received notice on this date.

**I hereby certify** that the foregoing document will be served on all counsel of record or pro per parties not receiving electronic notification via U.S. Mail on September 29, 2009.

/s/ Philip J. Landau
Philip. J. Landau

102150-001/767433

## SERVICE LIST

**APPELLANTS:**

Architectural Materials, Inc., d/b/a AMI
Hospitality, Inc. and its subsidiary Peregrine
Installation Co.

Collings Interiors, LLC

Commercial Roofers, Inc.

Door-Ko, Inc.

Door & Hardware Management, Inc.

Eberhard Southwest Roofing, Inc.

EIDS Steel Company, LLC

Gallagher-Kaiser Corporation

L.A. Nevada, Inc., d/b/a G&G Systems

J.S. & S., Inc.

LVI Environmental of Nevada, Inc.

Marnell Masonry, Inc.

Midwest Drywall Co., Inc.

Midwest Pro Painting, Inc.

Mechanical Insulation Specialists (MIS)

Modernfold of Nevada, LLC

Southern Nevada Paving, Inc.

Universal Piping, Inc.

West Edna & Associates, d/b/a Mojave Electric

W&W Steel, LLC of Nevada

**COUNSEL:**

Philip. J. Landau
Florida Bar No. 504017
SHRAIBERG, FERRARA & LANDAU
P.A.
2385 N.W. Executive Center Dr.,
Suite 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: Plandau@sfl-pa.com

Gregory E. Garman
Nevada Bar No. 6654
Thomas H. Fell
Nevada Bar No. 3717
GORDON SILVER
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone:          (702) 796-5555
Facsimile:(702) 369-2666
*Admitted Pro Hac Vice*

**APPELLEES**

Fontainebleau Las Vegas Holdings, LLC,
Fontainebleau Las Vegas, LLC, Fontainebleau
Las Vegas Capital Corp.

**COUNSEL:**

BILZIN SUMBERG BAENA PRICE &
AXELROD LLP
Scott L. Baena
Jay Sakalow
Mindy Mora
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-5340
Telephone: (305) 350-2403
Facsimile: (305) 351-2203

**INTERESTED PARTY:**

1888 Fund, Ltd.

Aberdeen Loan Funding, Ltd.

Armstrong Loan Funding Ltd.

Battlion CLO 2007-1 Ltd.

Brentwood CLO, Ltd.

Brigade Leveraged Capital Structures Fund, Ltd.

Canpartners Investments IV, LLC

Canyon Special Opportunities Master Fund
(Cayman), Ltd.

Carlyle High Yield Partners 2008-1, Ltd.

Carlyle High Yield Partners IX, Ltd.

Carlyle High Yield Partners VI, Ltd.

Carlyle High Yield Partners VII, Ltd.

Carlyle High Yield Partners VIII, Ltd.

Carlyle High Yield Partners X, Ltd.

Carlyle Loan Investment, Ltd.

**COUNSEL:**

AKERMAN SENTERFITT
Michael I. Goldberg
James H. Fierberg
Las Olas Centre II
One Southeast Third Avenue, 25th Floor
Miami, Florida 33131-1714
Telephone: (305) 374-5600
Facsimile: (305) 374-5095

-and-

HENNIGAN, BENNETT & DORMAN LLP
Bruce Bennett
Sidney P. Levinson
865 Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

102150-001/767433

Copper River CLO Ltd.

Eastland CLO, Ltd.

Emerald Orchard Limited

Gleneagles CLO, Ltd.

Grayson CLO, Ltd.

Green Lane CLO Ltd.

Greenbriar CLO, Ltd.

Highland Credit Opportunities CDO, Ltd.

Highland Loan Funding V, Ltd.

Jasper CLO, Ltd.

Kennecott Funding Ltd.

LFC2 Loan Funding LLC

Liberty CLO, Ltd.

Loan Funding IV LLC

Loan Funding VII LLC

Loan Star State Trust

Longhorn Credit Funding, LLC

NZC Opportunities (Funding) II Limited

Orpheus Funding LLC

Orpheus Holdings LLC
Red River CLO, Ltd.

Rockwall CDO II, Ltd.

Rockwall CDO, Ltd.

Sands Point Funding Ltd.

102150-001/767433

Southfork CLO, Ltd.

Stratford CLO, Ltd.

Westchester CLO, Ltd.

| **INTERESTED PARTY:** | **COUNSEL:** |
|---|---|
| Aurelius Capital Management, L.P. | QUINN EMANUEL URQUHART, OLIVER & HEDGES, LLP<br>Susheel Kirpalani<br>Scott C. Shelley<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: (212) 849-7199<br>Facsimile: (212) 849-7100<br><br>-and-<br><br>Eric Winston<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 443-3602<br>Facsimile: (213) 443-3100<br><br>BAST AMRON LLP<br>SunTrust International Center<br>One Southeast Third  Avenue, Suite 1440<br>Miami, Florida 33131<br>Telephone: (305) 379-7904<br>Facsimile: (305) 379-7905 |

**INTERESTED PARTY:**                    **COUNSEL:**

Desert Fire Protection                   EHRENSTEIN CHARBONNEAU
                                         CALDERIN
Bombard Mechanical LLC                   Robert P. Charbonneau
                                         Daniel L. Gold
Bombard Electric, LLC                    800 Brickell Avenue, Suite 902
                                         Miami, Florida 33131
Warner Enterprises                       Telephone: (305) 722-2002
                                         Facsimile: (305) 722-2001
Absocold Corporation

Austin General Contracting

Powell Cabinet and Fixture Co.

Safe Electronics, Inc.


**INTERESTED PARTY:**                    **COUNSEL:**

The Official Committee of Unsecured      GENOVESE JOBLOVE & BATTISTA, P.A.
Creditors                                Paul J. Battista
                                         Glenn D. Moses
                                         100 Southeast 2nd Street, 44th Floor
                                         Miami, Florida 33131
                                         Telephone: (305) 349-2300
                                         Facsimile: (305) 349-2310

                                         -and-

                                         FOX ROTHSCHILD, LLP
                                         Michael Viscount
                                         Joshua T. Klein
                                         Midtown Building, Suite 400
                                         1301 Atlantic Avenue
                                         Atlantic City, New Jersey 08401
                                         Telephone: (609) 348-4515
                                         Facsimile: (609) 348-6834

**INTERESTED PARTY:**                          **COUNSEL:**

Turnberry West Construction, Inc.              BERGER SINGERMAN, P.A.
                                               Paul Steven Singerman
                                               200 South Biscayne Boulevard, Suite 1000
                                               Miami, Florida 33131
                                               Telephone: (305) 755-9500
                                               Facsimile: (305) 714-4340


**INTERESTED PARTY:**                          **COUNSEL:**

Colesanti Specialty Services, Inc.             PECKAR & ABRAMSON
                                               Ralf R. Rodriguez
                                               401 East Las Olas Boulevard, Suite 1600
                                               Ft. Lauderdale, Florida 33301
                                               Telephone: (954) 764-5222
                                               Facsimile: (954) 764-5228

                                               -and-

                                               PAUL JOSEPH MCAMAHON, P.A.
                                               Paul J. McMahon
                                               The Wisehart Building
                                               2840 S.W. Third Avenue
                                               Miami, Florida 33129
                                               Telephone: (305) 285-1222
                                               Facsimile: (305) 858-4864

                                               -and-

                                               MARTIN & ALLISON, LTD.
                                               Noah G. Allison
                                               3191 East Warm Springs Road
                                               Longford Plaza East, Bldg. 13
                                               Las Vegas, Nevada 89120
                                               Telephone: (702) 933-4444
                                               Facsimile: (702) 933-4445

| INTERESTED PARTY: | COUNSEL: |
|---|---|
| Derr & Gruenewald Construction Co. | MAY, MEACHAM & DAVELL, P.A. |
| | Robert C. Meacham |
| Graybar Electric Company, Inc. | One Financial Plaza |
| | Suite 2602 |
| Quality Cabinet and Fixture Company | Ft. Lauderdale, Florida 33394 |
| | Telephone: (954) 763-6006 |
| Tracy & Ryder Landscape, Inc. | |
| Z-Glass, Inc. | |
| Zetian Systems, Inc. | |
| Water FX, Inc. | |

| INTERESTED PARTY: | COUNSEL: |
|---|---|
| Aderholt Specialty Company, Inc. | MARKOWITZ, DAVIS, RINGEL, & |
| | TRUSTY, P.A. |
| CECO Concrete Construction, LLC | Ross R. Hartog |
| | Two Datran Center, Suite 1225 |
| | 9130 South Dadeland Boulevard |
| | Miami, Florida 33156 |
| | Telephone: (305) 670-5000 |

| INTERESTED PARTY: | COUNSEL: |
|---|---|
| QTS Logistics, Inc. | BAKER & HOSTETTLER LLP |
| | Richard J. Bernard |
| Quality Transportation Services of Nevada, Inc. | 45 Rockefeller Plaza |
| | New York, New York 10111 |
| | Telephone: (212) 589-4200 |
| Keenan Hopkins Suder & Stowell Contractors, Inc. | Facsimile: (212) 589-4201 |
| | -and- |
| Coreslab Structures (L.A.), Inc. | BAKER & HOSTETTLER LLP |
| | Eric S. Golden |
| | 200 S. Orange Avenue |
| | SunTrust Center, Suite 2300 |
| | Orlando, Florida 32801 |
| | Telephone: (407) 649-4000 |

102150-001/767433

Facsimile: (407) 841-0168

| **INTERESTED PARTY:** | **COUNSEL:** |
|---|---|

HSH Nordbank, AG, New York Branch

KAY SCHOLER, LLP
Andrew A. Kress
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8781
Facsimile: (212) 836-6728

-and-

RICE PUGATCH ROBINSON & SCHILLER, P.A.
Arthur Halsey Rice
101 Northeast Third Avenue, Suite 1800
Ft. Lauderdale, Florida 33301
Telephone: (305) 379-3121
Facsimile: (954) 462-4300

| **INTERESTED PARTY:** | **COUNSEL:** |
|---|---|

Bank of Scotland

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Harold D. Moorefield, Jr.
Museum Tower, 2200, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3467
Facsimile: (305) 789-2643

-and-

KATTEN MUCHIN ROSENMAN LLP
Kenneth E. Noble
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-6419
Facsimile: (212) 894-5653

| INTERESTED PARTY: | COUNSEL: |
|---|---|
| Southern Nevada Painters Trust Funds and | CHRISTENSEN JAMES & MARTIN |
| | Kevin B. Christensen |
| Southern Nevada Glaziers' Trust Funds | Sara D. Cope |
| | 7440 W. Sahara Avenue |
| | Las Vegas, Nevada 89117 |
| | Telephone: (702) 255-1718 |
| | Facsimile: (702) 255-0871 |

| INTERESTED PARTY: | COUNSEL: |
|---|---|
| Ahern Rentals, Inc. | DIXON TRUMAN FISHER & CLIFFORD |
| | Robin E. Perkins |
| QED, Inc. | 221 N. Buffalo Drive, Suite A |
| | Las Vegas, Nevada 89145 |
| Superior Tile & Marble, Inc. | Telephone: (702) 821-1821 |
| | Facsimile: (702) 259-9759 |

| INTERESTED PARTY: | COUNSEL: |
|---|---|
| Illuminating Concepts, Ltd. | Thomas D. Lumpkin, II |
| | 6258 SW 99th Ter |
| | Pinecrest, Florida 33146-3345 |
| | Telephone: (305) 444-0005 |
| | Facsimile: (305) 444-5366 |
| | |
| | -and- |
| | |
| | MICHAEL R. MUSHKIN & ASSOCIATES |
| | Michael R. Mushkin |
| | 4475 S. Pecos Road |
| | Las Vegas, Nevada 89121 |
| | Telephone: (702) 386-3999 |
| | Facsimile: (702) 454-3333 |

102150-001/767433

| INTERESTED PARTY: | COUNSEL: |
|---|---|
| Insulpro Projects, Inc. | DOBBERSTEIN & ASSOCIATES<br>Eric Dobberstein<br>8965 S. Eastern Avenue, Suite 280<br>Las Vegas, Nevada 89123<br>Telephone: (702) 382-4002<br>Facsimile: (702) 382-1661 |
| INTERESTED PARTY: | COUNSEL: |
| Fisk Electric Company | WEISS SEROTA HELFMAN PASTORIZA<br>COLE & BONISKE, P.L.<br>Carla M. Barrow<br>Mitchell A. Bierman<br>2525 Ponce De Leon Boulevard<br>Suite 700<br>Coral Gables, Florida 33134<br>Telephone: (305) 854-0800<br>Facsimile: (305) 854-2323 |
| INTERESTED PARTY: | COUNSEL: |
| ThyssenKrupp Safway, Inc. | BEHAR GUTT & GLAZER, P.A.<br>Brian S. Behar<br>Robert J. Edwards<br>2999 N.E. 191st Street, Fifth Floor<br>Aventura, Florida 33180<br>Telephone: (305) 931-3771<br>Facsimile: (305) 931-3774 |
| INTERESTED PARTY: | COUNSEL: |
| D'Alessio Contracting, Inc.<br><br>Waco Scaffolding & Equipment | GIBBS, GIDEN, LOCHER, TURNER &<br>SENET, LLP<br>Becky A. Pintar<br>3993 Howard Hughes Parkway<br>Suite 530<br>Las Vegas, Nevada 89169<br>Telephone: (702) 836-9800<br>Facsimile: (702) 836-9802 |

102150-001/767433